IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01742-RPM

SHARON K. MARSAK,

                        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

_____

ORDER OF REVERSAL AND REMAND
_____

The Commissioner's decision denying the applications for Disability Insurance Benefits and Supplemental Security Income filed by Sharon Marsak was based on the decision of an Administrative Law Judge ("ALJ") on November 17, 2004, determining that she was not disabled because she retained the residual functional capacity to perform her past relevant work as a motel cleaner. Upon review of the extensive administrative record and the briefs filed in this action for judicial review of that decision under 42 U.S.C. § 405(g) the conclusion is that the denial decision is reversed because the ALJ failed to recognize the significance of the medical records documenting severe migraine headaches; failed to show any appreciation of the relationship between the claimant's complaints of chronic and persistent pain with the diagnosis of somatoform disorder and possible dependent personality disorder; failed to give an adequate explanation of his rejection of the

claimant's testimony as not credible; and failed to evaluate the requirements of the claimant's past relevant work as a motel cleaner.

The ALJ's decision, after a hearing on September 18, 2004, in Durango, Colorado, includes the following finding of medically determinable impairments:

> Thus, the medical evidence reflects that the claimant has degenerative disc disease of the cervical and lumbar spine, patellar chondromalacia of the right knee, depression, impaired cognitive functioning and chronic pain syndrome. Since these medically determinable impairments cause more than minimal functional limitations, they are considered to be severe. R. 39.

After reviewing and summarizing medical records, the ALJ concluded:

> Based on the evidence in its entirety, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work with the option to sit or stand, at will, to alleviate symptoms; with no repetitive stooping; and with no complex tasks, due to her moderate deficits of attention and concentration, and her moderate difficulty in remembering and carrying out detailed instructions. Light work involves lifting of no more than 20 pounds at a time, frequently lifting and carrying objects weighing up to 10 pounds, and may involve a good deal of standing and walking (20CFR §§ 404.1567(b) and 416.967)b)). R. 42.

With these findings, the ALJ further concluded that the claimant's past relevant work as a motel cleaner did not require the performance of work-related activities precluded by the residual functional capacity to perform light exertional work as he described it.

The plaintiff's relevant medical history began with an on-the-job injury to her back when she was working at a motel in Durango in January, 1999. She continued to work and sought worker's compensation benefits. She was first seen by Dr. Susan Weber, M.D., for treatment in March, 1999. Dr. Weber continued to see this patient for her continuing reports of pain and physical limitations. After

2

referrals for a lumbar MRI scan in June, 1999, and a cervical MRI scan in November, 1999, and referrals for evaluations by a neurosurgeon and an orthopedic surgeon and another lumbar MRI in July, 2000, Dr. Weber reported maximum medical improvement on September 7, 2000, limiting the work to sedentary light duty. R. 209. On October 4, 2000, Dr. Weber assessed the claimant as having a 31% impairment for worker's compensation purposes and noted that Ms. Marsak would likely need periodic physical therapy, evaluations and treatment for flareups and would likely need medication life long. R. 199-203.

At the request of state vocational services, Ms. Marsak was given a psychological evaluation by J. W. Ragsdale Ph.D. on August 24, 2001. R. 425-430. Dr. Ragsdale thought that she suffered from chronic pain and depression with moderate impairments associated with reasoning, judgment and problem solving.

Dr. Weber had provided medications for chronic pain including Soma, Lortab, Oxycontin, Percocet, Carisoprodol, Zanaflex, Ambien, and Neurontin.

On September 3, 2002, Dr. Weber discharged the claimant from care believing that there had been a violation of a narcotic contract with this patient. Ms. Marsak was seen by Dr. George H. Maxted, M.D., at Durango Primary Care on March 19, 2003. Dr. Maxted gave claimant samples of Maxalt for her headaches. R. 335-336.

In April, 2003, Ed Cotgageorge, Ph.D., did a psychological evaluation, including the administration of MMPI-2 and other tests. Based on the testing and interview, Dr. Cotgageorge found that she probably met the criteria for

somatization disorder and dependent personality disorder with psychological functioning exacerbating her physiological pain.  Dr. Cotgageorge recommended a course of pain management for chronic pain and expressed the opinion that traditional medical treatment would be unsuccessful with a need for a clinician to make decisions about the claimant's self-care and home-based responsibilities.

At the ALJ hearing, the claimant testified that her worker's compensation claim had not been resolved.  She said that she experienced migraine headaches at least twice a month, lasting at least 12 to 24 hours with three to four days recovery time.  She has had no psychological treatment for her emotional problems.  She further testified that her back gets weak as she walks; that she does not do any type of exercise; that she can sit for 10 to 12 minutes but then has stabbing pain in her back; that her legs and hips start going numb after standing 12 or 13 minutes; that she has problems reaching her arms over her head and that she cannot bend, kneel or stoop on a job.  Ms. Marsak further testified that she gets only three hours of sleep during the night, being awakened by pain; that she must take rest periods to elevate her right leg every hour and that she is unable to make the bed, take out the trash or do outside work.  She further said that she stopped driving because of her migraine headaches.

In his decision, the ALJ said that he considered the listings in Section 1.00ff of Appendix 1, Part 404, Subpart P, for musculoskeletal impairments and found that the claimant did not meet or equal any of them.  He did not explain that conclusion.  The ALJ also said that he considered the listings for mental disorders, including Listing 12.07 for Somatoform Disorders.  In finding that the claimant did

4

not meet or equal that listing, the ALJ referred to Dr. Ragdale's August, 2001, evaluation but did not mention Dr. Cotgageorge's evaluation in April, 2003.

Throughout his opinion, the ALJ makes much of suggestions in the medical records that the claimant was magnifying her symptoms of pain and that the claimant was seeking narcotics unnecessarily. What the ALJ failed to discuss and, therefore, perhaps failed to appreciate, is that both of the psychological evaluations showed reasons why this woman was so difficult to manage for control of pain.

In listing the impairments that the ALJ found as functional limitations of this claimant, he failed to include migraine headaches, although treatment for them was shown repeatedly in the medical records. The ALJ discounted almost all of Ms. Marsak's testimony about her daily activities and the pain limitations on her functioning. Apparently, the ALJ believed these were magnifications which did not warrant serious consideration. The credibility findings of an ALJ are entitled to deference only if they are adequately explained and in this case the failure of the ALJ to connect the mental disorders with the pain limitations described by the claimant casts doubt on his credibility determination.

In finding that the claimant was not disabled at Step 4 of the sequential evaluation process because she had the residual functional capacity to return to her former employment, the ALJ failed to consider the job requirements of that work. In her disability report questionnaire, Ms. Marsak wrote that she lifted and carried supplies, lifted and carried stacks of towels and sheets, helped in laundry and cleaned motel rooms with bending, stooping, crawling and lifting all day. R. 105. At the hearing the vocational expert ("VE") recognized that the claimant had

documented this difference in the physical requirements of the work she did and the DOT description of a motel cleaner as light exertional work.  By her description, the job was not a light sedentary position but required heavier exertion.  The VE further testified that a person who missed more than three days of work a month would be difficult to employ.   It seems apparent that if any credit is given to the claimant's testimony about her job requirements and her inability to bend, kneel, stoop or reach overhead, she could not perform that job.  The ALJ's hypothetical questions to the VE did not include anything related to the migraine headaches documented in the medical records.

Finding that the ALJ's determination at Step 4 was not consistent with the requirements of the law and inconsistent with the evidence, it is

ORDERED that the decision is reversed and this matter remanded for further determination, presumably at Step 5.  It is recommended that the claimant be evaluated by a psychiatrist and chronic pain management specialist.

Dated:   May 8, 2008

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge